UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREGORY MCINNIS, )<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>VETERAN'S VILLAGE and CITY OF )<br>HOBART, INDIANA, )<br>      Defendants. ) | CAUSE NO.: 2:21-CV-127-JPK |

## OPINION AND ORDER

This matter is before the Court on motions to dismiss Plaintiff Gregory McInnis's amended complaint, filed by Defendant Veterans Village [DE 37] and Defendant City of Hobart, Indiana (the "City") [DE 39]. Veterans Village also requests that the Court strike the complaint. On March 17, 2022, then-presiding judge Philip P. Simon[1] dismissed McInnis's prior complaint and granted McInnis leave to file this amended complaint. Defendants now argue that the amended complaint does not state a legal claim against them. McInnis filed a response [DE 45], which the Court accepts as timely filed because it was postmarked before McInnis's revised deadline to respond. [*See* DE 44, 45-1].

At the outset, the Court notes that affordable housing for disabled veterans is quite literally the least we can provide for those who served and are disabled. The dispute here does not center around whether McInnis qualifies as a disabled veteran. It seems apparent from the filings that he earned that status, and therefore lived at Veterans Village. What also seems more or less undisputed is that Veterans Village did not feel that McInnis was living up to the terms under which he resided in their housing, and sought eviction. Generally speaking, and as discussed

---

[1] The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings. [DE 41].

further below, this Court is not the proper place to challenge that eviction. As Judge Simon said in ruling on the initial motions to dismiss in this case: State court is the venue to challenge the eviction, even though McInnis tried to prevent the eviction by invoking an order from the Centers for Disease Control and Prevention ("CDC"). [*See* DE 33 at 7-8]. For the reasons described below, the motions to dismiss are granted.

## BACKGROUND

For purposes of the motions to dismiss, the Court considers the facts in the light most favorable to McInnis, accepting as true all well-pleaded facts alleged, and drawing all plausible inferences in his favor. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016). The Court considers the body of McInnis's amended complaint as well as the attached exhibits. *See* Fed. R. Civ. Pro. 10(c); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (on a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint"). The Court also takes judicial notice of the docket in *NWI Veterans Village, LP v. Gregory McInnis*, 45H05-2101-EV-000014 (filed Jan. 12, 2021), the eviction case in the Hobart City Court that gives rise to this lawsuit. *See* Fed. R. Evid. 201(b); *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) (a court may take judicial notice of judicial proceedings). The Court does not assume the truth of any statements contained within the court filings, only of the fact "that those documents exist [and that] they say what they say." *Our Country Home Enters. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 n.1 (7th Cir. 2017).

The complaint alleges as follows: McInnis lived at Veterans Village, a housing complex in Gary, Indiana, catering to disabled veterans. On February 8, 2021, McInnis received a summons to the Hobart City Court, because Veterans Village was seeking to evict him for failing to pay rent. He requested an "audit" of his rent, which resulted in Veterans Village crediting him with four

months of back rent. Veterans Village continued to pursue eviction proceedings, arguing that McInnis still owed back rent. Presented with these facts, the Hobart City Court "denied the audit stating [that] as long as some rent was owed the eviction proceedings would continue." [DE 36 at 1-2].

During the eviction proceedings, McInnis presented a sworn declaration that he was seeking federal housing assistance and had made partial rent payments to the best of his ability. McInnis believed that his declaration entitled him to a stay of eviction based on the federal moratorium on evictions in effect at that time.[2] However, the Hobart City Court "subjectively determined that Plaintiff had not lived up to the declaration," and ultimately granted an order for possession of the property to Veterans Village. [*Id*. at 2].

On April 16, 2021, Officer J. Hayes of the Hobart Police Department appeared at Veterans Village to carry out the eviction. Hayes told McInnis that he had to vacate immediately. McInnis alleges: "[A]n issue arose as to whether [McInnis] had time to gather certain medications . . . Because of the slowness of [McInnis] in gathering all medication necessary, and because the locksmith had changed the lock within less than seven minutes, Officer Hayes stated that time was up and placed [McInnis] under arrest." [*Id*. at 2].

McInnis was taken to the Hobart jail, where he fell ill "with what was believed to be a heart attack." After "numerous requests for medical treatment," he was taken by ambulance to a hospital. [DE 36 at 2-3]. Medical records from the hospital indicate that he was treated for "chest pain, unspecified." [DE 36-1 at 13-15]. After several hours at the hospital, he was given back to the

---

[2] The Court infers, as Judge Simon did, that McInnis is referring to the CDC's September 4, 2020 order titled "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19." 85 FR 55292-01, 2020 WL 5253768 (F.R.). Under that order, certain tenants who provided "an executed copy of the Declaration form . . . to their landlord" could not be evicted from a residential property through December 31, 2020, for failure to pay rent. *Id*. at 55292-93.

Hobart police. The police drove McInnis back to the Hobart police station, released him with no explanation, and refused to give him a ride back to Gary. [DE 36 at 3]. Roughly six weeks later, on May 28, 2021, Officer Hayes signed an affidavit of probable cause stating that he arrested McInnis because McInnis had refused to leave the property unless he was arrested. [DE 36-1 at 3].[3] On June 4, 2021, McInnis was summoned to appear before the Lake County Superior Court for arraignment on a charge of misdemeanor criminal trespass. [DE 36 at 3].

In terms of damages, McInnis alleges he "suffered a heart attack resulting in pain, suffering and duress beginning on April 16, 2021 [the day of the eviction] and continuing today." McInnis also seeks the return of his belongings from his former apartment, and a stolen car. McInnis states that the car was "confiscated" at Veterans Village, and the Village "refuses to divulge its location." [*Id*. at 4]. McInnis reported the car as stolen from the Village parking lot on June 11 or 12, 2021, roughly two months after his eviction. [DE 36-1 at 8-9, 17].

Judge Simon addressed many of these allegations in his opinion dismissing the prior complaint. He explained that the CDC's moratorium on evictions does not provide a private right of action, and therefore does not entitle McInnis to relitigate the order of possession in federal court. [DE 33 at 7-8]. As for McInnis's removal from the apartment, Judge Simon found that while the prior complaint "hinted at" a potential Fourth Amendment violation, it did not set forth facts

---

[3] McInnis attached Hayes's probable cause affidavit to his complaint. In general, if an attached exhibit "contradicts the complaint's allegations, the exhibit takes precedence" on a motion to dismiss. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). However, the fact that Hayes attested to a different version of events does not show that McInnis's allegations are false or that McInnis adopts Hayes's version. *See Otis v. Demarasse*, 886 F.3d 639, 646-47 (7th Cir. 2018) ("A plaintiff does not, simply by attaching documents to his complaint, make them a part of the complaint and therefore a basis for finding that he has pleaded himself out of court.") (quoting *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007)); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998) ("To conclude summarily, however, that letters . . . represent the truth with regard to the defendants' intent simply because [the plaintiff] attached them to its complaint for reasons unrelated to their truthfulness is inappropriate."). Therefore, the Court adopts McInnis's version of events, rather than Hayes's, in evaluating the motion to dismiss. *Cf. Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 755 (7th Cir. 2002) (adopting facts from an exhibit as true where "no contrary facts were alleged in the actual complaint").

showing how McInnis's eviction violated the Fourth Amendment, or why the City was liable for that conduct. [*Id*. at 9]. However, the amended complaint adds some additional detail, and the Court reviews this complaint from scratch, considering the details as McInnis presents them in this version, and disregarding any allegations that were only made in the prior complaint. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998).

## STANDARD OF REVIEW

"The purpose of a motion to dismiss [pursuant to Rule 12(b)(6)] is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quotation marks and citation omitted). As described above, the Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all plausible inferences in his favor. *Jackson*, 833 F.3d at 862; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion to dismiss for failure to state a claim, a complaint must comply with Rule 8(a)(2) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not analogous to a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If there is a plausible legal claim, the Court must also have subject matter jurisdiction over that claim. Typically, the claim must either "arise under" federal law, or more than $75,000 must be in controversy between citizens of different states. *See* 28 U.S.C. §§ 1331, 1332. Finally, the Court also considers that McInnis is proceeding *pro se*, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

Although the defendants filed separate motions to dismiss[4], many of the issues overlap, so the Court addresses the complaint as a whole rather than the individual motions.

**1.    Judicial immunity**

The City argues that it has judicial immunity, along with Officer Hayes, who is not independently named as a defendant. Generally, the doctrine of judicial immunity protects "judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). But McInnis sued the city itself, not the judge or the Hobart City Court. "Municipal entities are not entitled to absolute [judicial] immunity even where the entity's officers are entitled to immunity." *Capra v. Cook Cnty. Bd. of Rev.*, 733 F.3d 705, 710-11 (7th Cir. 2013).

Hayes, the officer who carried out the eviction order, is entitled to some level of judicial immunity. *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) ("[W]hen functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate.")

---

[4] The City's motion argues that McInnis "has not met his burden to establish standing." However, this section of the City's memorandum simply recites the standard of review for a motion to dismiss, and states in conclusory fashion that the amended complaint "fails to state a claim on which relief can be granted" and "lacks the necessary factual content" to support a reasonable inference of liability. [See DE 38 at 2-4]. It does not establish a basis for dismissal based on "standing."

(quoting *Kincaid v. Vail*, 969 F.2d 594, 600-01 (7th Cir. 1992)). However, the immunity does not apply "when the conduct directly challenged is not the judge's decision making, but the manner in which that decision is enforced." *Id*. at 436; *McNease v. Laldee*, No. 19-CV-7280, 2021 WL 1057295, at *4 (N.D. Ill. Mar. 18, 2021) (no immunity for sheriff's deputies sued for "the manner in which they carried out the eviction . . . [s]pecifically, their failure to take notice of the fact that the order of possession had been vacated, their refusal to allow McNease to retrieve and present proof of that fact, and their invasive search of his drawers during the eviction"); *Falk v. Perez*, 973 F. Supp. 2d 850, 858 (N.D. Ill. 2013) (denying immunity to an officer who evicted the wrong person: "Simply because an officer is executing a court order . . . does not necessarily mean that he is automatically immunized from all conduct he engages in while executing that court order.").

McInnis did not name Hayes as a defendant. However, noting the requirement that *pro se* filings be liberally construed, the Court considers whether McInnis's allegations could support a claim against the City or against Hayes individually.

### 2. Eviction proceedings

McInnis first argues that the Hobart City Court exceeded its jurisdiction because the amount in controversy was greater than the jurisdictional threshold for city court proceedings. However, McInnis cannot contest the eviction proceedings in this court. Separately from any question of judicial immunity, "federal district courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (listing examples). Specifically, "federal courts do not have authority to review the validity of state-court orders of eviction, so long as the plaintiff has a reasonable opportunity to raise her challenge in state court."[5] *Watson v. Marsh*, 98 F. App'x 526, 528 (7th Cir. 2004)

---

[5] As Judge Simon previously explained, the fact that McInnis attempted to invoke the CDC's order does not give him the right to sue in federal court. [*See* DE 33 at 7-8 (explaining that "[e]very court that has looked at this issue . . . has

(citations omitted); *see also Chambers v. Habitat Co.*, 68 F. App'x 711, 713 (7th Cir. 2003). McInnis disagrees with the Hobart City Court's decisions, but he has not pled any facts showing that he has been unable to challenge them with the appropriate appeal procedure for that court.

The Court expresses no opinion on McInnis's jurisdictional argument, but for context, briefly describes his position: McInnis argues that the jurisdictional threshold for the Hobart City Court was $6,000.00, but the court heard his case even though the amount in controversy was greater than $6,000.00. $6,000.00 is the jurisdictional threshold listed in Indiana Code § 33-35-2-5, and on the City Court's website, which cites that statute as a basis for jurisdiction. [*See* Ind. Code § 33-35-2-5; https://www.cityofhobart.org/227/City-Court (last visited March 27, 2023)].[6] McInnis also believes the case should not have been heard in Hobart, because Veterans Village is located in Gary. However, nothing in the complaint suggests that McInnis could not have made these arguments in state court.

McInnis argues that Veterans Village is liable to him because of its "involvement in a case for which [it] knew or should have known" of the alleged jurisdictional flaws. Indiana law recognizes the tort of abuse of process when a party uses the court system for an "ulterior purpose or motive . . . not proper in the regular conduct of the proceedings." *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016). The typical example of abuse of process is when one party sues another for the purpose of embarrassment, harassment, or to force them to pay legal fees, rather than for the actual relief requested in the lawsuit. "There is no basis for an abuse of process claim if [the] legal process is used to accomplish an outcome that the process was designed to

---

determined that the CDC Order and the code sections relied upon in the order do not create a private right of action") (listing cases)].

[6] In its motion to dismiss, the City argues that the relevant jurisdictional threshold is $10,000.00, citing Indiana Code § 33-34-3-3. [DE 38 at 5]. But that article of the Indiana Code appears to pertain to the Marion County small claims courts. *See* § 33-34-1-1 *et seq*; *Welch v. 1106 Traub Tr.*, No. 21A-PL-2888, 2023 WL 1095295, at *9 (Ind. Ct. App. Jan. 30, 2023) (sections 33-34-3-2 through 33-34-3-4 grant jurisdiction to small claims courts).

accomplish." *Waterfield*, 61 N.E.3d at 328 (citing *Nat'l City Bank of Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997)). "The gravamen of [abuse of process] is not the wrongfulness of the prosecution but some extortionate perversion of lawfully initiated process to illegitimate ends." *Shortridge*, 689 N.E.2d at 1252.

Even assuming Veterans Village sued in the Hobart City Court despite having reason to believe that the City Court did not have jurisdiction, McInnis has not stated a claim for abuse of process. There are no facts suggesting that Veterans Village had an "ulterior motive": the Village wanted to evict McInnis for non-payment of rent, and that was the relief it pursued and obtained from the court. At a minimum, McInnis would have to show that "no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.'" *Shortridge*, 689 N.E.2d at 1253; *Waterfield*, 61 N.E.3d at 328 (abuse of process "requires more than evidence of a questionable belief as to the merits of a case"). The fact that Veterans Village won the case strongly cuts against any inference that the case was unworthy of litigation, or that no competent attorney would have pursued it on the Village's behalf.

3.  **Events of April 16**

McInnis also objects to the way in which Officer Hayes carried out the eviction. As described above, Hayes enjoys at least some degree of judicial immunity in carrying out the court's order. McInnis does not dispute that the court issued an order entitling Veterans Village to possession of the property, or that Hayes was acting pursuant to that order when he arrived to remove McInnis.[7] Assuming McInnis's allegations as true, as we must at the pleading stage, Hayes

---

[7] McInnis did not attach the order of possession to his amended complaint. However, he has not alleged any facts supporting a reasonable inference that the eviction was contrary to the court's order, or that Hayes sought to remove him at a time when the order was not in force.

made McInnis leave within seven minutes and without letting him collect certain medications he had left in the apartment. While Hayes could have been more patient with McInnis, McInnis has not alleged that these actions defied the City Court's order.

Regardless of Hayes's judicial immunity, these allegations would not state a legal claim. McInnis argues that the eviction violated his Fourth Amendment right of freedom from unreasonable search or seizure. But with the order of possession in effect, McInnis "had no lawful right to be in the residence he was occupying . . . Because [McInnis] had no legitimate expectation of privacy in the residence, no Fourth Amendment search occurred." *United States v. Curlin*, 638 F.3d 562, 565-66 (7th Cir. 2011) (listing cases).

The Court has also considered whether McInnis's time in jail on the day of the eviction could support a legal claim. McInnis alleges he thought he was having a heart attack in the jail, and he had to make numerous requests for medical treatment.[8] He was eventually taken to the hospital, treated for chest pain, and discharged after several hours. McInnis could state an Eighth Amendment claim against the officers at the jail if he pled facts showing that they were deliberately indifferent to his serious medical needs. To establish liability, he would need to show that: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."

---

[8] McInnis's allegation about the heart attack is ambiguous: "[P]laintiff fell ill *with what was believed* to be a heart attack. After numerous requests for medical treatment, plaintiff was rushed by ambulance to the nearest hospital." [DE 36 at 2 (emphasis added)]. The Court infers that McInnis believed he was having a heart attack, because it was McInnis who made numerous requests for medical treatment. Although his statement could be construed to mean that the *officers* believed he was having a heart attack, there are no other facts in the complaint that reasonably support that inference, and no other allegations about the jail officers' treatment of his illness. Without "sufficient factual matter" to support the inference, the mere possibility that McInnis's statement could be construed that way is not enough. *See Iqbal*, 556 U.S. at 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

*Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "The officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Id.*, quoting *Farmer*, 511 U.S. at 837.

Although McInnis believed he was having a heart attack in the jail, the hospital records did not indicate that he had a heart attack, so there is some doubt as to whether the medical need was "objectively serious" such that McInnis's constitutional rights were at risk. Assuming that it was, McInnis has not pled facts raising a plausible inference that any officer was deliberately indifferent to his needs. McInnis himself indicates that he was rushed by ambulance to the nearest hospital. [DE 36 at 2]. And while he alleges he had to request medical attention multiple times, the Eighth Amendment does not require that he receive immediate medical attention any time he requests it. *See, e.g., Sanville v. McCaughtry*, 266 F.3d 724, 736 (7th Cir. 2001). To show deliberate indifference, McInnis would have to show that the officers genuinely believed he was at risk of serious harm, and that despite this belief, they delayed seeking medical help with no regard for that risk. There are no facts suggesting that this was in the minds of the jail officers.[9]

McInnis also complains that Hayes made a warrantless arrest without a "prompt judicial determination" of probable cause. But the Fourth Amendment requirement for a prompt judicial determination – typically 48 hours – applies to defendants who are held in jail beyond that time period. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). McInnis was released on the same day he was arrested, so there was no requirement to prepare a probable cause affidavit within 48 hours.

---

[9] In his amended complaint, McInnis has not alleged that there was any connection between the medications he left at Veterans Village and his chest pain at the jail. If there was a connection, he has not alleged that any officer was aware that this medication issue posed a substantial risk of serious harm to him.

11

The probable cause affidavit itself conflicts sharply with McInnis's version of events. If McInnis wanted to state a claim based on an allegation that Hayes made false statements in the affidavit, he would have to show that Hayes "intentionally or recklessly include[d] false statements . . . and those false statements were material to a finding of probable cause." *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). The false statements are "material" if the affidavit, with the false statements removed, would not demonstrate probable cause. *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019).

According to Hayes's affidavit, which the Court did not presume as true for purposes of this motion: Hayes granted McInnis substantial time to vacate the apartment, during which McInnis attempted to demonstrate that he was challenging the eviction. Hayes then telephoned the Hobart City Court, which confirmed that the eviction order was still in effect. Hayes gave McInnis the chance to collect smaller items and arrange to have larger items removed, but McInnis said that he would not leave unless he was arrested, so Hayes arrested him. Even assuming these statements were false, McInnis has not shown they were material to the probable cause determination. It is undisputed that despite any pending challenge by McInnis, the eviction order remained in effect on the date of the eviction; therefore, McInnis did not have the right to possession of the property, and Hayes had probable cause to believe that McInnis was trespassing. [*See* DE 36-1 at 7, citing Ind. Code § 35-43-2-2(b)(2)].

### 4. McInnis's belongings and car

Finally, McInnis requests relief because his "belongings [including] his car [were] confiscated." The Court infers that McInnis's "belongings" refers to items he left in his apartment when he was evicted. Under Indiana law, when a landlord is awarded possession of a dwelling and the tenant does not remove his belongings within the time set by the court, the landlord can remove

the belongings to a storage facility. *See* Ind. Code § 32-31-4-2(d),(e). Although McInnis states that his items were "confiscated," he does not plead any facts indicating that Veterans Village violated applicable law in how it dealt with his belongings.

McInnis reported that his car was stolen from the Veterans Village parking lot on June 11 or 12, 2021, after he was evicted. McInnis states that "Veterans Village refuses to divulge its location" [DE 36 at 4], but he has not alleged facts to show that Veterans Village knows where the car is, that the Village has any obligation to McInnis for a car stolen from its parking lot, or that this Court would have jurisdiction over any claim arising from the loss of his car or other belongings.

## CONCLUSION

Having considered all facts and reasonable inferences in McInnis's favor, and liberally construed his amended complaint as required of a *pro se* litigant, the Court concludes that McInnis is unable to state a claim for which this Court can provide relief. Noting that McInnis's prior complaint was dismissed for the same reasons, the Court does not find the interest of justice would be served by allowing McInnis to re-plead his complaint.

Veterans Village requests that the complaint be stricken as well as dismissed, arguing that Judge Simon's opinion precluded McInnis from naming Veterans Village in the amended complaint. Veterans Village does not argue that the allegations themselves are "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), and the Court finds that dismissal of the complaint makes the issue moot. *See Good v. Walnut Grove Mut. Hous. Ass'n*, No. 3:12-CV-39-TLS, 2013 WL 450152, at *6 (N.D. Ind. Feb. 5, 2013) (where parts of a complaint were dismissed, a request to strike briefing on those claims was moot).

Accordingly, the Court **GRANTS** the requests to dismiss [DE 37, 39], and **ORDERS** that the complaint is **DISMISSED with prejudice**. The Court **DENIES as moot** Veterans Village's request to strike the complaint.

So ORDERED this 28th day of March, 2023.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT
